IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLIFTON WILLIAMS, | : | Civil No. 1:23-CV-01005 |
| Plaintiff, | : | |
| v. | : | |
| GEORGE M. LITTLE, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Plaintiff Clifton Williams ("Plaintiff"), a self-represented prisoner housed at the State Correctional Institution Mahanoy ("SCI-Mahanoy") in Frackville, Pennsylvania, has filed a motion seeking a temporary restraining order and preliminary injunction. (Doc. 30.) For the reasons discussed below, Plaintiff's motion will be denied.

### PROCEDURAL HISTORY

Plaintiff initiated this action by filing an emergency motion for a temporary restraining order seeking relief from the February 24, 2022 letter issued by former Security of the Pennsylvania Department of Corrections ("DOC"), George M. Little, precluding Defendant and other Muslim inmates at SCI-Mahanoy from purchasing halal meats and desserts from outside vendors for the celebratory meals associated with Eid-ul-Fitr and Eid-ul-Adha. (Doc. 1.) Due to the immediate

onset of Eid-ul-Adha and the lack of service to defendants, the court denied the motion. (Doc. 4.)

Plaintiff then filed a complaint under 42 U.S.C. § 1983 challenging the February 24, 2022 letter issued by former Security Little precluding Defendant and other Muslim inmates at SCI-Mahanoy from purchasing halal meats and desserts from outside vendors for the celebratory meals associated with Eid-ul-Fitr and Eid-ul-Adha. (Docs. 8.) The complaint named five Defendants: (1) George Little ("Little"), former Secretary of the Pennsylvania DOC; (2) Laurel Harry ("Harry"), current Secretary of the DOC; (3) Keri Moore ("Moore"), Acting DOC Chief Grievance Officer; (4) Bernadette Mason, Superintendent at SCI-Mahanoy; and (5) Ben Scott, Chaplaincy Program Director at SCI-Mahanoy. (*Id.*, pp. 2–3.)[1] The court ordered a copy of the complaint and waiver of service forms be forwarded to Defendants. (Doc. 10.)

Defendants responded by filing a motion to temporarily stay the proceedings while they re-examined the policy change set forth in the February 24, 2022 letter in response to litigation in the Western District of Pennsylvania in *Williams v. Little, et al.* No. 1:23-cv-0037, 2023 WL 4144567 (W.D. Pa. June 23, 2023) and three additional cases. (Doc. 14, pp. 2–3.) The court granted a 90-day stay, which expired on December 18, 2023. (Docs. 15, 20.) Following the expiration of the

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

stay, Plaintiff filed a notice detailing a November 15, 2023 Adjustment to Religious Meals Memorandum. Plaintiff asserts that this Memorandum does not remedy the constitutional violations that arose from the February 24, 2022 letter issued by Defendant Little. (Doc. 28.)

Defendants then filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 24.) This motion is awaiting a responsive pleading of by Plaintiff. (Doc. 33.)

On February 1, 2024, Plaintiff filed a renewed motion for a temporary restraining order with a brief in support seeking relief from both the February 24, 2022 letter and the November 15, 2023 Memorandum for the 2024 Eid Celebrations. (Docs. 30, 31.) Following a court order requiring a response, Defendants filed a response. (Doc. 36.) Plaintiff did not file a reply. The motion for a temporary restraining order is now ripe for the court's consideration.

## PRELIMINARY INJUNCTION STANDARD

Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. Motions for temporary restraining orders and preliminary injunctions are judged against exacting legal standards. Preliminary injunctive relief "is not granted as a matter of right." *Kershner v. Mazurkiewicz*, 670 F. 2d 440, 443 (3d Cir. 1982). Rather, it "is an 'extraordinary remedy.'" *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018)

(quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)).  A motion is properly granted only if such relief is the "only way of protecting the plaintiff from harm."  *Instant Air Freight Co. v. C.F. Air. Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).  "It has been well stated that upon an application for a preliminary injunction to doubt is to deny."  *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937).

"When evaluating a motion for preliminary injunctive relief, a court considers four factors: (1) has the moving party established a reasonable likelihood of success on the merits (which need not be more likely than not); (2) is the movant more likely than not to suffer irreparable harm in the absence of preliminary relief; (3) does the balance of equities tip in its favor; and (4) is an injunction in the public interest.  *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019) *reversed on other grounds by* 141 S. Ct. 1868 (U.S. 2021).  "The first two factors are prerequisites for a movant to prevail."  *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018).  "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."  *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

As the first two factors that are necessary for a preliminary injunction "suggest, there must be a relationship between the injury claimed in the party's

motion and the conduct asserted in the complaint." *Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010) (internal quotation marks omitted) (quoting *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). Thus, it is inappropriate to grant a motion for a preliminary injunction when the relief requested in the motion is unrelated to the allegations in the complaint. *Id.* at 838; *see also Moneyham v. Ebbert*, 723 F. App'x 89, 92 (3d Cir. 2018) (holding that the District Court correctly denied a "requested injunction because it involved allegations unrelated to the complaint").

The limitations on the power of courts to enter injunctions in a correctional context are underscored by statute. Specifically, preliminary injunctive relief in a civil action with respect to prison conditions must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct that harm. *See* 18 U.S.C. § 3626(a)(2). Also, in considering a motion for preliminary injunctive relief, the court must give substantial weight to any adverse impact such relief may have on public safety or on the operation of the criminal justice system. *Id.*

A court's discretion to issue preliminary injunctive relief is even further limited when a plaintiff seeks mandatory injunctive relief. "[W]hen the preliminary injunction is directed not merely at preserving the status quo but . . . at providing mandatory relief, the burden on the moving party is particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980) (citing *United States v.*

*Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976)). "[A] mandatory injunction is an 'extraordinary remedy to be employed only in the most unusual case.'" *Trinity Indus. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013) (citing *Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235, 1235 (1972)). For a court to grant mandatory injunctive relief, "the moving party's 'right to relief must be indisputably clear.'" *Id.* (quoting *Communist Party of Indiana v. Whitcomb*, 409 U.S. 1235 (1972)). Furthermore, "a request for some form of mandatory proactive injunctive relief in the prison context 'must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Easley v. Tritt*, No. 1:17-CV-00930, 2019 WL 1497054, at *3 (M.D. Pa. Mar. 11, 2019) (quoting *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

### RLUIPA STANDARD

The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). RLUIPA states that the government shall not

> impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in

furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). A substantial burden under RLUIPA exists where:

> (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs.

*Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007).

## DISCUSSION

### A. The Evolution of the DOC Religious Meal Policy.

Plaintiff alleges that the settlement of a lawsuit in the 1970's resulted in the DOC allowing the recognition of various Islamic practices and observances, but then the DOC has been slowly restricting those previously recognized practices and observances. (Doc. 31, p. 2.)

The February 24, 2022 letter at issue in Plaintiff's complaint states the following:

> The Department currently offers Ceremonial meals pursuant to DC-ADM 819. For these meals, Food Services prepares a separate meal apart from the mainline meal, and inmates are able to purchase optional menu items. With the ever-growing number of faith groups accommodated within the Department, a change in policy is needed to continue to strive for equity among those in faith groups.
>
> Beginning January 1, 2023, faith groups accommodated with Ceremonial Meals will instead be accommodated with up to two (2) Fellowship Meals a year. Fellowship Meals permit inmates of those

7

> faith groups to provide input on the mainline "best meal" to be served at two holy day observances per year; however, optional menu items will no longer be available. Additionally, members of each faith group will be able to eat together and afterwards engage in thirty (30) minutes of fellowship, provided communal gatherings are permitted at that time.
>
> Faith groups previously accommodated with Ceremonial Meals will still be able to observe them in 2022 as they have done in the past. Beginning in 2023 and going forward, only Fellowship Meals will be accommodated.

(Doc. 1-3.) The letter does not appear to make any formal changes to DC-ADM 819. (*Id.*)

Plaintiff also provided a Chaplain's Memo demonstrating that Jewish inmates housed at SCI-Mahanoy were permitted to purchase optional menu items for the 2023 Passover meals. (Doc. 1-6.) However, the final line of the Chaplain's Memo states that "Secretary Little's memo is still fully in effect for all religious observances. Central Office could not find a vendor for Matzah on the commissary purchase form, so this one-time provision is offered." (*Id.*, p. 2.)

The November 15, 2023 Memorandum provided notice that Section 1 of the DC-ADM 819 "Religious Activities Procedures Manual" subsection "E. Food Services" was amended from "Ceremonial Meals" to "Religious Meals," which are limited to two per year. (Doc. 30-1; Doc. 36-10.) This Memorandum allows for a group purchase of one identical inmate-purchased shelf-stable food item from an outside vendor to supplement each "Religious Meal." (*Id.*)

8

## B. Plaintiff's Motion for a Preliminary Injunction Will Be Denied.

Because the DOC issued the November 15, 2023 Memorandum, the 2024 Eid Celebrations are no longer subject to the February 24, 2022 letter. Therefore, Plaintiff will not continue to suffer the harm he asserts in his complaint.

In the complaint, Plaintiff alleges that forcing him to choose to partake in an institutional "Fellowship Meal" while foregoing participation in the well-established Eid Celebrations and Halal Islamic Feast imposes a substantial burden on his practice of religion in violation of the RLUIPA. (Doc. 8, p. 16.) He further states that the "invention of these Fellowship Meals to replace the Islamic Eid Celebrations and Halal Islamic Feasts is an infringement upon the practice of Islam in violation of the First Amendment (Free Exercise Clause); it creates a substantial burden on the practice of Islam" in violation of the RLUIPA. (*Id.*, p. 6.) Plaintiff does not explain how the "Fellowship Meals" create a substantial burden on the practice of Islam. Plaintiff highlights that the February 24, 2022 letter eliminated the purchase of outside food items and renamed the Eid Celebrations to "Fellowship Meals," but he does not specifically point to these changes as the source of the "substantial burden." (*Id.*, p. 4.) Therefore, the court is left to infer that the alleged cause of the substantial burden is the changing of the name of the feast and the inability to purchase outside food items.

Since the complaint was filed, Defendant Harry issued the November 15, 2023 Memorandum. Plaintiff's motion for preliminary injunctive relief specifically seeks relief from the February 24, 2022 letter and the November 15, 2023 Memorandum. (Doc. 31, p. 12.) Both Plaintiff and Defendants have submitted substantial briefing over how the November 15, 2023 Memorandum does or does not violate RLUIPA. (Docs. 31, 36.) However, the court need not address whether the November 15, 2023 Memorandum violates RLUIPA because that is not the claim raised in the complaint.

Instead, the court will consider whether or not Plaintiff will suffer irreparable harm in the absence of preliminary relief based on the allegations in the complaint. While the court agrees with Plaintiff that the November 15, 2023 Memorandum does not specifically revoke the February 24, 2022 letter regarding "Fellowship Meals," it appears that the February 24, 2022 letter is no longer applicable in 2024. The court reaches this conclusion based in part on the fact that the DOC issued a Bulletin on December 13, 2023 amending the DC-ADM 819, Section 1 in accord with the November 15, 2023 Memorandum, which took effect immediately. (Doc. 36-10.) This policy change implemented the practice of "Religious Meals" and allowed for the purchase of outside food items: "To supplement a Religious Meal, qualifying general population (GP) inmates with sufficient funds may, through Food Services, place one group order for one

10

identical inmate-purchased self-stable food item to supplement each Religious Meal." (*Id.*, p. 3.) Furthermore, Defendants have provided the "2024 Religious Meals" schedule, which includes the Eid Celebrations. (Doc. 36-12.) Additionally, Defendants have provided the "Possible Vendors for Self-Stable Items" list that identifies both "Muslim-Friendly" and Halal items.[2] (Doc. 36-11.) Neither the "2024 Religious Meal" schedule nor the "Possible Vendors for Self-Stable Items" documents would exist if the DOC were continuing to follow the February 24, 2022 letter, which implemented a "Fellowship Meal" policy and ceased the purchasing of outside food items. Thus, based on the evidence submitted by Defendants, it is apparent that the DOC will be following the November 15, 2023 memorandum and its rules regarding the celebration of "Religious Meals" in 2024. (Docs. 36, 36-10, 36-11, 36-12.) Therefore, Plaintiff is not subject to the alleged continuing harm based on the February 24, 2022 letter regarding "Fellowship Meals" because that policy will not be followed in 2024.

Instead, it is apparent that the DOC will be following the November 15, 2023 memorandum and its established policy of "Religious Meals." This is significant because the complaint clearly challenges the establishment of the

---

[2] On March 5, 2024, the court received and docketed Plaintiff's status report alleging that pre-packaged food items labeled "Muslim Friendly" did not necessarily equate to Halal certification. (Doc. 38.) However, the court notes that the "Possible Vendors for Self-Stable Items" list specifically identifies multiple items certified as Halal under it's heading "Muslim Friendly." (Doc. 36-11.) Therefore, while "Muslim Friendly" does not necessarily mean Halal, there are multiple Halal options available in 2024.

11

"Fellowship Meal," which concept has been abandoned in the November 15, 2023 memorandum.  Additionally, the complaint clearly challenges the termination of the option of purchasing halal food items from outside vendors, while the November 15, 2023 memorandum allows for the group purchase of one self-stable food item from an outside vendor to supplement the "Religious Meals."  (Docs. 30-1; 36-10.)

In sum, the November 15, 2023 Memorandum appears to cancel the cause of the substantial burden on Plaintiff's religious beliefs as he articulated them in his complaint: the "invention of these Fellowship Meals to replace the Islamic Eid Celebrations and Halal Islamic Feasts is an infringement upon the practice of Islam in violation of the First Amendment (Free Exercise Clause); it creates a substantial burden on the practice of Islam" in violation of the RLUIPA.  (Doc. 8, p. 6.)  Since Plaintiff is not likely to suffer irreparable harm in the absence of preliminary relief from the February 24, 2022 letter because that letter is no longer in effect, the preliminary injunction will be denied.

While Plaintiff seeks preliminary injunctive relief from the November 15, 2023 Memorandum as well, his complaint has not been amended to challenge any aspect of the November 15, 2023 memorandum.  Therefore, the court is not able to determine whether Plaintiff can succeed in any First Amendment or RLUIPA

claim regarding the November 15, 2023 Memorandum.  Therefore, preliminary relief from the November 15, 2023 Memorandum will be denied.

## CONCLUSION

Plaintiff has failed to meet his burden for the entry of a preliminary injunction on his RLUIPA claim, and the court therefore denies the motion for preliminary injunction.

A separate order follows.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated: March 25, 2024