**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CLIFTON WILLIAMS, | : | Civil No. 1:23-CV-01005 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GEORGE M. LITTLE, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is Defendants' motion to partially dismiss the complaint,

Doc. 66, and Plaintiff's motion for a preliminary injunction, Doc. 64. Plaintiff also

filed a motion for a ruling on the pending motion for a preliminary injunction.

(Doc. 68.) The court will grant the motion to dismiss in part and deny the motion

for an injunction as moot.

**PROCEDURAL BACKGROUND AND HISTORY**

Plaintiff initiated this action by filing an emergency motion for a temporary

restraining order seeking relief from the February 24, 2022 letter issued by former

Security of the Pennsylvania Department of Corrections ("DOC"), George M.

Little ("the Little Policy"), precluding Plaintiff and other Muslim inmates at the

State Correctional Institution ("SCI-Mahanoy") from purchasing halal meats and

desserts from outside vendors for the celebratory meals associated with Eid-ul-Fitr

and Eid-ul-Adha.  (Doc. 1.)  Due to the immediate onset of Eid-ul-Adha and the lack of service to defendants, the court denied the motion.  (Doc. 4.)

Plaintiff then filed a complaint under 42 U.S.C. § 1983 challenging the Little Policy precluding Plaintiff and other Muslim inmates at SCI-Mahanoy from purchasing halal meats and desserts from outside vendors for the celebratory meals associated with Eid-ul-Fitr and Eid-ul-Adha.  (Docs. 8.)  The complaint named five Defendants: (1) George Little ("Little"), former Secretary of the Pennsylvania DOC; (2) Laurel Harry ("Harry"), current Secretary of the DOC; (3) Keri Moore ("Moore"), Acting DOC Chief Grievance Officer; (4) Bernadette Mason ("Mason"), Superintendent at SCI-Mahanoy; and (5) Ben Scott ("Scott"), Chaplaincy Program Director at SCI-Mahanoy.  (*Id*., pp. 2–3.)[1]  The court ordered a copy of the complaint and waiver of service forms be forwarded to Defendants. (Doc. 10.)

Defendants responded by filing a motion to temporarily stay the proceedings while they re-examined the Little Policy in response to litigation in the Western District of Pennsylvania in *Williams v. Little, et al*. No. 1:23-cv-0037, 2023 WL 4144567 (W.D. Pa. June 23, 2023) and three additional cases.  (Doc. 14, pp. 2–3.) The court granted a 90-day stay, which expired on December 18, 2023.  (Docs. 15, 20.)  Following the expiration of the stay, Plaintiff filed a notice detailing a

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

November 15, 2023 Adjustment to Religious Meals Memorandum ("the Harry Policy"). Plaintiff asserts that this adjustment does not remedy the constitutional violations that arose from the Little Policy. (Docs. 26, 28.) Plaintiff's objections and concerns with the Harry Policy were received and docketed by the court in January of 2024. (*Id.*)

Defendants then filed a motion to partially dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 24.) Plaintiff filed a brief in opposition on March 19, 2024. (Doc. 39.) On September 23, 2024, the court granted the motion to partially dismiss the complaint and dismissed all claims against Defendants Little Moore, and Mason without prejudice. (Doc. 51, 52.) The court granted plaintiff leave to file an amended complaint. (Doc. 52.)

On December 27, 2024, the court received and docketed an amended complaint. (Doc. 57.) On January 14, 2025, Plaintiff filed notice of his intention to file a motion for an injunction. (Doc. 63.) He then filed the motion for a preliminary injunction on February 10, 2025. (Doc. 64.)

On February 25, 2025, Defendants filed a motion to partially dismiss the amended complaint. (Doc. 66.) On March 11, 2025, the court received a motion for an order on the motion for a preliminary injunction in light of the upcoming Eid-ul-Fitr holiday in April of 2025. (Doc. 68.) After multiple extensions of time,

Plaintiff filed a brief in opposition to the motion to dismiss in April of 2025.  (Doc.

75.)  Defendants then filed a reply brief.  (Doc. 76.)

JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. §

1331, which allows a district court to exercise subject matter jurisdiction in civil

cases arising under the Constitution, laws, or treaties of the United States.  Venue

is proper in this district because the alleged acts and omissions giving rise to the

claims occurred at SCI-Mahanoy in Schuylkill County, which is located within this

district.  *See* 28 U.S.C. § 118(b).

DISCUSSION

A. The Motion to Partially Dismiss Will Be Granted

1. Allegations in Amended Complaint

In the amended complaint, Plaintiff names four defendants: (1) Harry,

Secretary of the Pennsylvania the DOC; (2) Mason, Superintendent of SCI-

Mahanoy; (3) Scott, Director Chaplaincy Department at SCI-Mahanoy; and (4)

Michael Connelly ("Connelly"), Food Service Manager at SCI-Mahanoy.  (Doc.

57, pp. 2–3.)

Plaintiff alleges that he has been a practicing Muslim within the DOC for 34

years and he sincerely believes that celebrating the two annual Eid feasts are

central to the practice of Islam.  (*Id*., p. 4.)  He alleges that historically Muslim

4

inmates in the DOC were permitted to purchase fresh halal meats, other halal food items, and desserts from outside Muslim vendors for the halal feasts associated with celebrating the two Eid feasts.  (*Id*.)  Plaintiff alleges that on February 24, 2022, the former Secretary of the DOC, George M. Little issued a memorandum entitled "Transition to Fellowship Meals" ("the Little Policy") which discontinued the purchase of optional food items from outside vendors for religious celebratory meals "thereby eliminating the traditional halal feast central to the two Eid celebrations."  (*Id*., p. 5.)  Plaintiff states that "[b]y eliminating the traditional halal feast, this constructively terminated the Eid celebration which consists of Eid prayer, halal feast, play and amusement on the Eid day."  (*Id*.)  He states that under the policy following the memorandum, religious celebratory meals were to be selected from the regular institutional meal menu.  (*Id*.)  He also alleges that concessions were made for Jewish inmates who were allowed to purchase Matzah bread from an outside vendor for their Passover meal in 2023.  (*Id*)

Plaintiff alleges that following opposition to the February 24, 2022 memorandum, Defendant Harry issued a memorandum titled "Adjustment to Religious Meals" on November 15, 2023 ("the Harry Policy").  (*Id*.)  Plaintiff alleges that this second memo did not rescind the February 24, 2022 memo, but only clarifies that that the term "fellowship Meals" is synonymous with "Religious Meals."  (*Id*., p. 6.)  Plaintiff also alleges that this policy allows inmates to

purchase one shelf-stable, non-perishable, pre-packaged food item from a licensed outside food vendor that requires no preparation, cooking, or heating.  (*Id*.)  This self-stable food item is to supplement a regular institution menu meal as the celebratory meal for religious observances.  (*Id*.)  Plaintiff alleges that the DOC is offering the Muslims at SCI-Mahanoy a pre-packaged, ready-to-eat pouch of processed meat labelled Muslim friendly or halal for purchase from their selected outside vendor and is to be consumed cold as a supplement to a regular institutional meal, and that under the new memo, the religious meal cannot require any preparation, cooking, or heating.  (*Id*., pp. 6–7.)

Plaintiff states that traditional halal meat is served hot with an elaborate hot meal and desserts.  (*Id*., p. 7.)  He also states that nationwide, there is controversy among Muslims as to whether the pre-packaged, processed meat remains halal after preservatives and additives are processed into the meat.  (*Id*.)  Plaintiff alleges that this makes the meats dubious and certainly not suitable to be served at a traditional Islamic celebration.  (*Id*.)  He further alleges that any "pre-packaged, processed meat label[]ed halal that contains no questionable ingredients has to be heated for proper consumption according to the instructions on the packaging." (*Id*.)  Based on this, Plaintiff alleges that under the Harry Policy, and normal institutional operations, the pre-packaged, processed halal meats cannot be properly consumed at SCI-Mahanoy.  (*Id*.)  Plaintiff states that this results in only a

regular institutional menu meal being the sole option as the feast for the Eid celebrations and, thus, terminates the traditional Eid celebration for Plaintiff and the Muslims at SCI-Mahanoy.  (*Id*., p. 8.)  Plaintiff also alleges that under the Harry Policy, the administration at SCI-Mahanoy has discontinued allowing him and the Muslims from having access to the gym for the sport, play, and amusement components of the Eid celebrations.  (*Id*., p. 10.)

Plaintiff alleges that contrary to the Harry Policy, Jewish inmates were permitted to purchase a full Kosher Chicken dinner from a Jewish Institute that was delivered to the institution by a Rabbi and when the delivered meals ran short, SCI-Mahanoy's kitchen prepared and cooked a special chicken dinner for the Jewish inmates to celebrate Passover in 2024.  (*Id*., p. 8.)  Defendant Scott referred to it as a two for one.  (*Id*.)

Plaintiff further alleges that the Native American Circuit at SCI-Mahanoy had their annual Harvest Meal on October 24, 2024, and SCI-Mahanoy prepared a special meal consisting of fried or backed chicken, roasted potatoes, corn on the cob, steamed veggies, bread or buttered roll, and a baked dessert.  (*Id*., pp. 8–9.)  Plaintiff alleges that this is a concession made under the Harry Policy because it was not a regular institutional menu meal.  (*Id*., p. 9.)

Plaintiff alleges that Thanksgiving and Christmas are traditional Christian holidays, and the DOC deviates from the regular menu and prepares special meals

for these observances.  (*Id*.)  Additionally, Plaintiff states that Christian inmates are not required to purchase one shelf-stable food item from an outside vendor to supplement a regular institution menu meal as the religious celebratory meal for Christmas, but instead the institution prepared a special Christmas meal for Christian inmates on December 24, 2024.  (*Id*.)

Plaintiff alleges that the Jewish, Native American, and Christian concessions under the Harry Policy are made at the institution's expense while the no preparation, no cooking, and no heating mandates of the Harry Policy are strictly enforced against Plaintiff and the Muslim inmates at SCI-Mahanoy.  (*Id*.)  Furthermore, Plaintiff states that he and the Muslim inmates are required to pay for their own fresh halal meats and desserts.  (*Id*.)

Plaintiff alleges that he prepared a statement explaining, from a religious and legal standpoint, how the Little Policy infringed upon his religious practices and requested it not be implemented at SCI-Mahanoy.  (*Id*., pp. 10–11.)  A copy of this statement was provided to Defendants Harry, Scott, and Connelly with no response.  (*Id*.)  He states that in 2023, concession were made for Jewish inmates, but no such concessions were made for the Eid celebrations in 2023 and the celebrations were constructively discontinued.  (*Id*., pp. 11–12.)

Likewise, Plaintiff alleges that he prepared a statement explaining how the Harry Policy violated his religious rights in the same way the Little Policy had

done.  (*Id.*, p. 12.)  Plaintiff alleges that he filed this statement with the court,

which  resulted in Defendants' counsel receiving a copy of this statement.  (*Id.*)

Plaintiff brought claims under the First Amendment Free Exercise Clause

and the Establishment Clause, the Fourteenth Amendment Equal Protection

Clause, and the Religious Land Use and Institutionalized Persons Act

("RLUIPA").  (*Id.*, pp. 16–17.)

## 2.  Motion To Dismiss Standard

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to

9

relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.

*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014); *see also Phillips*, 515 F.3d at 245.  A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

### 3.  All Claims Against Defendants in their Official Capacity Will Be Dismissed.

In his complaint, Plaintiff does not indicate whether he is bringing his claims against Defendants in their official or individual capacities.  (Doc. 57.)  However, the Third Circuit requires a nonspecific complaint such as this to be liberally construed as if the claims were brought against Defendants in their individual and official capacities.  *Gregory v. Chehi,* 843 F.2d 111, 119–20 (3rd Cir. 1988) ("[R]esolving doubts in favor of plaintiff, we will assume he is suing the individuals in their personal capacities as well.").  Therefore, the court will proceed with an Eleventh Amendment analysis.

Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent."  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978).  In an official-capacity suit, the entity of which the officer is an agent is the real party in interest.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As such, claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the

Eleventh Amendment. *Christ the King Manor, Inc. v. Secretary U.S. Dept. Health and Human Services*, 730 F.3d 291, 318 (3d Cir. 2013). Because Defendants are state officials, in their official capacity as employees of the DOC, the claims against them in their official capacity for damages are really claims against the Commonwealth and, as such, are barred by the Eleventh Amendment.

A state, however, may waive its Eleventh Amendment immunity by consenting to suit, and Congress may abrogate states' Eleventh Amendment immunity when it unequivocally intends to do so and it acts pursuant to a valid grant of constitutional authority. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). The Commonwealth of Pennsylvania has not waived its Eleventh Amendment sovereign immunity, *see* 42 P.C.S.A.§ 8521(b), and 42 U.S.C. § 1983 does not override a state's Eleventh Amendment sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 341 (1979).

Although the Commonwealth of Pennsylvania has expressly reaffirmed its immunity from this type of suit in federal court, the state has waived sovereign immunity in nine limited circumstances. These exceptions to the general grant of immunity to the Commonwealth and its employees are for negligent acts involving: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or

control of animals; (7) liquor store sales; (8) National Guard activities; and (9)

toxoids and vaccines. 42 Pa. Cons. Stat. § 8522(b).  The exceptions to the

Commonwealth's sovereign immunity must be strictly construed because the

legislature waived immunity only in specific situations.  *Moser v. Heistand*, 681

A.2d 1322, 1326 (Pa. 1996) (citing *Snyder v. Harmon*, 562 A.2d 307 (1989)).

None of these exceptions apply here.  Accordingly, the Eleventh Amendment bars

Plaintiff from raising claims against Defendants in their official capacities.

### 4.  Claims Against Defendants Scott and Connelly Will Be Dismissed, But Limited Claims Against Defendant Mason Will Survive Defendants' Motion.

Defendants assert that the claims against Defendants Mason, Scott, and

Connelly should be dismissed based on a lack of personal involvement.  (Doc. 67,

pp. 8–10.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold

requirements.  He must allege: 1) that the alleged misconduct was committed by a

person acting under color of state law; and 2) that as a result, he was deprived of

rights, privileges, or immunities secured by the Constitution or laws of the United

States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  It is also well established that "[a]

defendant in a civil rights action must have personal involvement in the alleged

wrongs to be liable, and cannot be held responsible for a constitutional violation

which he or she neither participated in nor approved." *See Baraka v. McGreevey*,
481 F.3d 187, 210 (3d Cir. 2007).

"Participation in the after-the-fact review of a grievance or appeal is not
enough to establish personal involvement." *Rode v. Dellarciprete,* 845 F.2d 1195,
1208 (3d Cir. 1988) (finding the filing of a grievance is not enough to show the
actual knowledge necessary for personal involvement); *see also Brooks v. Beard*,
No. 05-3196, 2006 WL 332547, 167 F. App'x 923, 925 (3d Cir. Feb. 14, 2006)
(holding that a state prisoner's allegation that prison officials and administrators
responded inappropriately, or failed to respond to a prison grievance, did not
establish that the officials and administrators were involved in the underlying
allegedly unconstitutional conduct).

Plaintiff alleges that in response to the Little Policy, he prepared a statement
that was sent to Defendants Harry, Scott, and Connelly.  (Doc. 57, p. 11.)  Plaintiff
further alleges that Defendant Scott did not respond, but made an exception to the
policy for Jewish Passover in 2023.  (*Id*.) Likewise, Plaintiff alleges that Defendant
Connelly did not respond to the statement.

Plaintiff also alleges that he drafted a Status Report explaining how the
Harry Policy violated his religious rights, and a copy of the Status Report was
served to counsel for the Defendants, but no concessions were made by Defendants
Mason and Scott.  (*Id*., p. 12).  Plaintiff further alleges that during this period

exceptions to the policy were made for Jewish, Native American, and Christian inmates by Defendants Scott and Connelly by Defendants Scott and Connelly with the approval of Defendant Mason. (*Id.*, pp. 12–13.)

Defendants Mason, Scott, and Connelly cannot be liable for not responding to the statements provided by Plaintiff. Failing to respond to a prison grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. *See Brooks*, 167 F. App'x at 925. Furthermore, the alleged unconstitutional action is the limitation on religious feasts within the DOC and the resulting alleged constitutional violations experienced by the Muslim inmate population, specifically, Plaintiff. Therefore, the treatment of other religious populations within the DOC may be used as narrative to demonstrate the constitutional violation when compared to the Muslim population, but the allowance of accommodations themselves under either policy is not a constitutional violation. Therefore, Plaintiff has not properly alleged personal involvement on the part of Defendants Mason, Scott, and Connelly as their failures to respond to Plaintiff's grievances does not amount to personal involvement. Their accommodation for other religious populations is not unconstitutional conduct.

What the above analysis does not address is the potential for liability for Defendant Mason premised on his role as Superintendent at SCI-Mahanoy.

15

"[S]everal courts have concluded that a supervisory official may be held liable stemming from the review of a grievance alleging an ongoing violation because the official 'is personally involved in that violation because he is confronted with a situation he can remedy directly.'" *Wilkins v. Wolf*, No. 1:20-CV-2450, 2021 WL 1578250, at *5 (M.D. Pa. Apr. 22, 2021) (collecting cases). Based on the facts set forth in Plaintiff's current complaint, Defendant Mason had the ability to make accommodations for specific populations to deviate from the Little and Harry Policies concerning religious feast celebrations. This, in combination with the allegations that Defendant Mason was the recipient of Plaintiff's complaints of the Harry policy in January of 2024 and did not accommodate the 2024 Eid holidays in the way Plaintiff requested, lead the court to conclude that the claims against Defendant Mason in this limited context will survive the current challenge.

### 5. First Amendment Establishment Clause Claims Will Be Dismissed.

Plaintiff raises First Amendment claims under the Establishment Clause in relation to the accommodations allegedly granted to other religious populations, but not the Muslim population. (Doc. 57, p. 16.) However, the Establishment Clause is not applicable to this action. The court agrees with the Western District of Pennsylvania in the following assessment:

> Whatever the Little Policy's faults might be, it is plainly secular; it does not attempt to "make a religious observance compulsory." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537 (2022) (citing *Zorach v.*

Case 1:23-cv-01005-JPW-EW    Document 78    Filed 08/29/25    Page 17 of 20

*Clauson*, 343 U.S. 306, 314 (1952)).  Rather, the Little Policy, if
anything, provides a mechanism for a religious meal observance and
restricts the observance of religion, and such an effect is properly
addressed via a Free Exercise claim, not an Establishment Clause claim:

> In our Establishment Clause cases we have often stated the
> principle that the First Amendment forbids an official
> purpose to disapprove of a particular religion or of religion
> in general. . . .These cases, however, for the most part have
> addressed governmental efforts to benefit religion or
> particular religions, and so have dealt with a question
> different, at least in its formulation and emphasis, from the
> issue here.  Petitioners allege an attempt to disfavor their
> religion because of the religious ceremonies it commands,
> and the Free Exercise Clause is dispositive in our analysis.
> At a minimum, the protections of the Free Exercise Clause
> pertain if the law at issue discriminates against some or all
> religious beliefs or regulates or prohibits conduct because
> it is undertaken for religious reasons.

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520,
532 (1993) (citations omitted).

*Molina v. Little*, No. 1:23-cv-0025, 2024 WL 3548453, *3 (W.D. Pa. July 26,

2024).  The court finds that the same can be said about the Harry Policy.  It

functions similarly to the Little Policy.  Therefore, the court will dismiss the

Establishment Clause claims with prejudice.

### 6. Fourteenth Amendment Equal Protection Claim Will Be Dismissed Without Prejudice.

The Equal Protection Clause of the Fourteenth Amendment commands that

no State shall "deny to any person within its jurisdiction the equal protection of the

laws," which is essentially a direction that "all persons similarly situated should be

treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that (1) he is a member of a protected class, and (2) he was treated differently from similarly situated inmates. *See id.* In the prison context, an inmate must show that he was treated differently from similarly situated inmates due to intentional or purposeful discrimination. *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985).

Here, Plaintiff's amended complaint is lacking any allegations that the alleged difference in treatment from other religious populations was intentional or purposeful discrimination. (Doc. 57.) Therefore, the Fourteenth Amendment claims associated with the difference in treatment compared to the other religious populations will be dismissed.

**B. The Motion for Injunction Will Be Denied As Moot.**

Plaintiff filed a motion for a temporary restraining order and injunction requesting that the court enjoin SCI-Mahanoy from applying the Harry Policy in 2025 and ordering the facility to return to the pre-Little Policy for the treatment of religious celebrations for the year. (Doc. 64.) Plaintiff lists the approximate dates for the two 2025 Eid celebrations as April 1, 2025 and June 6, 2025. (*Id.*, p. 1.) On April 10, 2025, the Defendants filed their brief in opposition explaining that the DOC replaced the Harry Policy on March 5, 2025. (Doc. 72, 72-1.) On May 2, 2025, Plaintiff filed his reply brief arguing that Defendants' briefing was late, and

should be disregarded by the court and argues that the newest policy continues to impose a substantial burden on his practice of religion.  (Doc. 76.)

Regardless of the timeliness of Defendants' filing, the fact remains that the policy Plaintiff was seeking relief from was no longer in effect as of the 2025 Eid feast days.  Therefore, his motion for a preliminary injunction is moot and will be denied as such.  Likewise, Plaintiff's motion for a ruling on the injunction is denied as moot.

### CONCLUSION

For the above stated reasons, Defendants' motion to dismiss will be granted in part and denied in part.  All claims against Defendants in their official capacities will be dismissed with prejudice.  All claims against Defendants Scott and Connelly will be dismissed without prejudice.  The claims against Defendant Mason in his role in reviewing grievances concerning the Little Policy will be dismissed.  All First Amendment Establishment Clause claims will be dismissed with prejudice.  The Fourteenth Amendment Equal Protection claims will be dismissed without prejudice.

Plaintiff's Free Exercise and RLUIPA claims against Defendant Mason for events that took place after Plaintiff forwarded his objections to the Harry Policy in January of 2024 survive this motion.  Additionally remaining are the Free Exercise and RLUIPA claims against Defendant Harry.

Since the Harry policy was no longer in effect at the time of the 2025 Eid feasts and moving forward, Plaintiff's motion for an injunction is moot, and will be denied as such.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 29, 2025